UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

CAROLYN FABIAN STUMPH,        )
                              )
            Plaintiff,        )     CASE NO. _____
                              )
v.                            )
                              )
TRUSTEES OF PURDUE UNIVERSITY,)
                              )
            Defendants.       )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Carolyn Fabian Stumph ("Stumph") brings this action against the Trustees of Purdue University ("Purdue") for violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), as amended, to correct unlawful intentional and ongoing discrimination directed against her on the basis of her gender, and to provide appropriate relief.

## PARTIES

1. Stumph is an individual who resides in Allen County, Indiana.

2. Stumph is female.

3. At all times relevant to her claims, Stumph was (and remains) an employee of Purdue within the meaning of the EPA.

4. At all times relevant to her claims, Stumph has worked primarily at the Purdue Fort Wayne campus, in Fort Wayne, Indiana.

5. Purdue is an employer within the meaning of the EPA.

## JURISDICTION

6. The Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331.

7. This Court is the proper venue for this case pursuant to 28 U.S.C. §1391.

## EQUAL PAY ACT COVERAGE

8. Purdue is Stumph's employer within the meaning of the Equal Pay Act of 1963, 29 U.S.C. §203(d), as amended.

9. Stumph is an employee within the meaning of the Equal Pay Act of 1963, 29 U.S.C. §203(e)(1).

## FACTUAL ALLEGATIONS

10. Stumph has been employed by Purdue, working as a Continuing Lecturer since 2015.

11. When Stumph was hired as a Continuing Lecturer, she was provided an offer letter containing the terms and conditions of her employment, which letter was dated November 20, 2014 (the "Offer Letter").

12. The Offer Letter had been approved by the Chancellor of IPFW.

13. The Offer Letter offered her an appointment to Continuing Lecturer in Economics beginning on August 17, 2015.

14. The Offer Letter indicated that her initial salary would be $49,000 for the academic year.

15. The Offer Letter indicated that her duties would consist of "100% teaching, along with normally expected professional development and departmental service."

16. Stumph accepted the offer as presented in the Offer Letter on November 24, 2014.

17. Despite the description of duties in the Offer Letter, Stumph was required to research and publish academic articles as a condition of her employment.

18. Professor Hedayeh Samavati, Professor of Economics and Acting Chair, communicated Stumph's performance evaluation to her via correspondence dated June 28, 2016 ("2015 Evaluation").

19. In the 2015 Evaluation, Samavati reviewed Stumph's performance in three categories: teaching, research, and service.

20. In the 2015 Evaluation, Samavati noted that Stumph had one co-authored article published and one article accepted for publication in a refereed journal, and had additional works in progress.

21. In the 2015 Evaluation, among other things, Samavati indicated that it was "desirable" for Stumph to have at least one article accepted for publication in 2017.

22. In the 2015 Evaluation Samavati confirmed that Stumph must meet AACSB faculty qualification standards, which standards require research and publication.

23. The 2015 Evaluation was copied to the Dean Khamalah.

24. No male Continuing Lecturer in the Department of Economics at PFW has been required to perform research and publish at any time.

25. On or around July 12, 2016, Stumph was offered, and she accepted, appointment to the position of MBA Director in the Doermer School of Business ("MBA Director").

26. The appointment to MBA Director became effective on July 1, 2016.

27. While serving as the MBA Director, Stumph continued to work as a Continuing Lecturer.

28. When Stumph was appointed to the position of MBA Director, her salary increased to $75,551, of which $12,000 was compensation for performing the duties of MBA Director.

29. Sometime after being appointed to the position of MBA Director, Stumph learned that she was being paid significantly less for her Continuing Lecturer duties than her male counterparts.

30. Sometime after being appointed to the position of MBA Director, Stumph also learned that no male Continuing Lecturer was required to perform research and publish academic articles.

31. No male Continuing Lecturer in the Economics Department was required to perform research and/or publish articles.

32. In the Fall of 2018, Stumph brought the salary disparity and additional research and publication requirement to Professor Nodir Adilov, who was the Chair of the Economics Department.

33. Professor Adilov convened a meeting with tenured professors to review the terms of Stumph's compensation and duties. After the meeting, Stumph's duties and compensation did not change.

34. On or around December 19, 2018, Stumph requested a salary equity review from Human Resources and the Office of Institutional Equity, which is the internal process to address pay disparity and related issues.

35. Stumph requested the review only of her compensation as a Continuing Lecturer, which was $63,551.04 at that time.

36. In its response, Human Resources and the Office of Institutional Equity admitted that the most closely comparable Continuing Lecturer was a male with an annual salary of $68,238.88 at that time.

37. In its response, Human Resources and the Office of Institutional Equity admitted that Stumph had a higher level of education than the male identified as the most closely comparable Continuing Lecturer.

38. In its response, Human Resources and the Office of Institutional Equity stated that performance expectations for Stumph and the male identified as the most closely comparable Continuing Lecturer were similar.

39. In its response, Human Resources and the Office of Institutional Equity attributed the admitted pay disparity to the fact that the male was hired at a higher rate of pay and also that he received more increases.

40. Human Resources and the Office of Institutional Equity ignored the fact that Stumph was required, in addition to her teaching duties, to engage in research and

maintain the Scholarly Academic Status under the AACSB faculty qualification standards, and the most closely comparable male Continuing Lecturer was not.

41. In comparing the relative salaries between Stumph and the male comparator, Human Resources and the Office of Institutional Equity ignored the fact that Stumph's compensation was for 12 months, while the male comparator's salary was compensation for only 9 months.

42. Dean Melissa Gruys raised the issues contained in paragraphs 40 and 41, above, to the attention of Human Resources and the Office of Institutional Equity, seeking a more complete review, but Human Resources and the Office of Institutional Equity did not respond.

43. Stumph continues to be paid less than the male employee comparator.

## COUNT I

44. Stumph did work for Purdue that was at least substantially equal to that of a male employee comparator.

45. Stumph and the male employee comparator did their jobs under similar working conditions.

46. Purdue paid Stumph less money that the male employee comparator.

47. Purdue acted willfully in violation of the Equal Pay Act with respect to Stumph.

*WHEREFORE*, Stumph respectfully demands relief as follows:

1. An order awarding judgment in her favor and against Defendants for

damages consisting of the difference between the pay of male employees and the pay of Plaintiff during the period that Plaintiff was paid in violation of the Equal Pay Act;

2. An order awarding judgement against Defendant for liquidated damages;

3. An order awarding judgment against Defendant for compensatory damages;

4. An order awarding judgment against Defendant for attorney's fees;

5. An order awarding judgment against Defendants for the costs of this action; and

6. An order awarding all other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

BECKMAN LAWSON, LLP

By: /s/Gary D. Johnson
Gary D. Johnson, #16082–03
gjohnson@beckmanlawson.com
201 West Wayne Street
Fort Wayne, IN  46802
Telephone:   (260) 422–0800
Facsimile:    (260) 420–1013
ATTORNEY FOR PLAINTIFF

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

                                Respectfully submitted,

                                BECKMAN LAWSON, LLP

By:    /s/Gary D. Johnson
        Gary D. Johnson, #16082–03
        gjohnson@beckmanlawson.com
        201 West Wayne Street
        Fort Wayne, IN  46802
        Telephone:   (260) 422–0800
        Facsimile:   (260) 420–1013
        ATTORNEY FOR PLAINTIFF